

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 450 | **DATE** | 8/27/2002 |
| **CASE TITLE** | SHEN WEI INC vs. KIMBERLY-CLARK CORP | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]     Pursuant to Memorandum Opinion and Order entered this day, defendant's motion for summary judgment is granted in part and denied in part. Defendant's motion for reassignment of Case No. 02 C 5196 pursuant to Local Rule 40.4 is denied. This action is dismissed with prejudice in its entirety. All other pending motions are moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | | |
| ✓ | Notices mailed by judge's staff. | number of notices | |
| | Notified counsel by telephone. | AUG 2 8 2002 | |
| | Docketing to mail notices. | date docketed | |
| | Mail AO 450 form. | docketing deputy initials | 52 |
| | Copy to judge/magistrate judge. | 8/27/2002 | |
| JS | courtroom deputy's initials | date mailed notice | |
| | | JS | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |



|  |  |
|---|---|
| SHEN WEI (USA) INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 02 C 0450 |
| | ) |
| KIMBERLY-CLARK CORPORATION, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

On January 18, 2002, plaintiff Shen Wei (USA) Inc. ("Shen Wei") filed a single count complaint alleging patent infringement under 35 U.S.C. §271 *et. seq.* against defendant Kimberly-Clark Corporation ("K-C"). K-C filed a motion to reassign the case <u>Shen Wei USA Inc., et. al. v. Kimberly Clark Corp.</u>, Case No. 02 C 5196 (N.D. Ill 2002), now pending before Judge Gettleman, to this court's calendar pursuant to Local Rule 40.4. K-C also filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.

Turning first to the motion to reassign, this court finds that this case and Case No. 02 C 5196 cannot be resolved in a single proceeding. This court also finds that the reassignment of Case No. 02 C 5196 to this case will not result in "a substantial saving of judicial time." Local Rule 40.4(b)(2). Accordingly, K-C's motion to reassign is denied.

Turning to K-C's motion for summary judgment, for all the following reasons, K-C's motion is granted in part and denied in part.

1



Shen Wei is a California corporation with its principal place of business in Union City, California. K-C is a Delaware corporation with its principal place of business in Roswell, Georgia. Shen Wei is the assignee of U.S. Patent No. 6,274,154B1 ("'154 patent'"). The '154 patent teaches "a novel disposable glove with Aloe Vera uniformly applied to the inner surface of the glove through a dehydration process, and a method for making such a glove." ('154 patent, Shen Wei's In Camera Response In Opposition to Kimberly-Clark's Motion For Summary Judgment of Non-Infringement, attached Exhibit D, KC 001982: Col. 2, 2-5). According to the '154 patent specification, the objectives of the inventions are accomplished "by applying Aloe Vera evenly to the inner surface of a disposable examination glove through dehydration." (Id. at Col. 2, lines 23-25). The specification also teaches that to apply the Aloe Vera evenly to the inner surface "the [disposable examination] gloves are turned inside out and dipped into a prepared Aloe Vera solution to saturate the outer surface." (Id. at Col. 2, lines 30-32).

K-C also manufactures gloves with attached aloe vera to the inside surface. The manufacturing process for the K-C gloves has three primary steps:

Step 1: A base layer of the glove is created by dipping hand-shaped formers in large tanks of liquid material - either natural rubber latex or acrylonitrile;

Step 2: After the base layer dries, the hand-shaped formers with the base layer of the glove are dipped into tanks containing a liquid solution of polymer coating. This creates a "polycoat" layer on top of the base layer of the glove;

---

[1] The following facts are undisputed and are from the respective Local Rule 56.1(a)(3) & Rule 56.1(b)(3)(B) statements of material facts and accompanying exhibits.

Step 3: The gloves are removed from the hand-shaped formers, and turned "inside-out," meaning the interior of the glove with the polycoat layer is exposed. Next, the gloves are inserted into a commercial dryer for the emollient application. An emollient solution of aloe vera is then sprayed onto the polycoat layer while the gloves are being tumbled within the rotating drum of the dryer. The emollient solution is sprayed for a two-minute segment while the gloves are tumbling, then the gloves are allowed to continue to tumble within the dryer without the solution being sprayed for two-minutes to complete a single cycle. The entire emollient application process consists of at least 13 cycles. After the final cycle, the gloves are allowed to tumble in the dryer for 10 minutes. Subsequently, the gloves are inverted to an "outside-out" configuration so that the emollient layer is on the inside of the glove.

## STANDARD OF REVIEW

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in the nonmovant's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1996). This court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.

A party who bears the burden of proof on a particular issue, however, may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S. Ct.

3

2548, 2553 (1986). There is no issue for trial "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249, 106 S. Ct. at 2511.

## ANALYSIS

Patent infringement analysis is a two-step process. CCS Fitness, Inc. v. Brunswick Corp., 288 F.3d 1359, 1365 (Fed. Cir. 2002)(citation omitted). First, this court must determine, as a matter of law, the correct scope and meaning of any disputed claim terms. Id. Second, this court must compare the properly construed claims to the accused process in order to determine whether the accused process contains all the limitations of the claimed invention, either literally or by equivalents. Johnson Worldwide Associates, Inc. v. Zebco Corp., 175 F.3d 985, 988 (Fed. Cir. 1999); Renishaw PLC v. Marposs Societa' per Azioni, 158 F.3d 1243, 1247-48 (Fed. Cir.1998).

Shen Wei claims that K-C directly infringes Claims 1, 2, 3, 4, 5, 8, 9 and 12 of the '154 patent. It is undisputed that Claim 1 is an independent claim upon which Claims 2, 3, 4, and 5 are dependent, and that Claim 8 is an independent claim upon which Claims 9 and 12 are dependent. Thus, this court will focus its analysis on whether K-C's process of applying aloe vera infringes independent Claims 1 or 8 of the '154 patent, because if an accused process does not infringe an independent claim, than the accused process cannot infringe the claims that depend on the independent claim, see e.g., Wolverine World Wide, Inc. v. Nike, Inc., 38 F.3d 1192, 1199 (Fed. Cir. 1994)(citing Wahpeton Canvas Co. v. Frontier, Inc., 870 F.2d 1546, 1553 (Fed. Cir.1989) ("It is axiomatic that dependent claims cannot be found infringed unless the claims from which they depend have been found to have been infringed")).

4

I.    Claim Construction

In its motion for summary judgment, K-C asserts that its accused process does not infringe

Claim 1 or Claim 8 of the '154 patent because K-C's process does not employ "dipping" as a method

to apply aloe vera to the inside surface of gloves and because K-C's process does not require

"removing" the glove from a solution containing aloe vera.  Claim 1 of the '154 patent claims:

> 1. A disposable examination glove comprising:
> a) only a single layer of a flexible material forming a cavity to receive a hand; and
> b) a quantity of dehydrated Aloe Vera on an inner surface of the layer of the flexible material,
> the Aloe Vera contacting the hand during donning of the disposable examination glove,
> wherein the aloe vera is attached to the flexible material by dipping the glove into a solution
> comprising aloe vera, removing the glove from said solution and subsequently heating the
> glove to form a layer of dehydrated aloe vera on the surface of the glove.

and Claim 8 of '154 patent claims:

> 8. A method of manufacturing a disposable glove for protecting and soothing hands,
> comprising the steps of:
> a) mixing a quantity of water with Aloe Vera so as to dissolve the Aloe Vera and form a
> solution;
> b) arranging the glove inside out whereby an inner surface of the glove faces outward,
> wherein the inner surface is a surface of the glove that would face inward toward a hand
> while the glove is being worn on the hand;
> c) dipping the glove into the solution so that the inner surface is in contact with the solution;
> d) removing the glove out of the solution, wherein a portion of the solution is on the glove;
> e) heating the glove with the portion of the solution to cause water in the portion of the
> solution to evaporate and form a substantially evenly distributed layer of dehydrated Aloe
> Vera on the surface of the glove;
> f) cooling the glove to room temperature.

As to the term "removing," both sides agree that the term, as it is used in the '154 patent,

carries its ordinary and customary meaning:  "to move from a position once occupied."  See

American Heritage Dictionary, at 1046 (2nd Coll. ed. 1982).  Upon review of the term "removing,"

in context of the '154 patent, this court agrees with that construction.

As to the term "dipping," there is a dispute among the parties.  Shen Wei argues that this term

5

should carry its ordinary and customary meaning: "to plunge briefly into a liquid, usually in order to wet, coat, or saturate." See American Heritage Dictionary, at 399 (2nd Coll. ed. 1982). K-C submits that the term "dipping" should take its definition from the text of the '154 patent. K-C also argues that applying Shen Wei's proffered construction of the term "dipping" to the '154 patent would impermissibly add to the scope of the term "dipping" a means of applying aloe vera specifically surrendered by the patentee during the prosecution of the '154 patent to avoid prior art.

Claim construction is a matter of law. See Markman v. Westview Instruments, Inc., 52 F.3d 967, 979 (Fed. Cir. 1995). Claim interpretation begins with an examination of the intrinsic evidence, the claims, the specification and, if in evidence, the prosecution history of the patent. CCS Fitness, 288 F.3d at 1366 (citations omitted). Courts may also use extrinsic evidence, expert testimony and treatises, to resolve the scope and meaning of a claim term. Id.

Generally speaking, there is a heavy presumption that a claim term carries its ordinary and customary meaning, see CCS Fitness, 288 F.3d at 1366 (citations omitted), and dictionary definitions may establish a claim term's ordinary meaning. Rexnord Corp. v. Laitram Corp., 274 F.3d 1336, 1344 (Fed. Cir.2001) (using Random House Unabridged Dictionary to define the ordinary meaning of "portion" as encompassing both a one-piece and a two-piece structure); Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1584 n. 6 (Fed. Cir.1996) ("Although technical treatises and dictionaries fall within the category of extrinsic evidence, as they do not form a part of an integrated patent document, they are worthy of special note. Judges are free to consult such resources at any time in order to better understand the underlying technology and may also rely on dictionary definitions when construing claim terms, so long as the dictionary definition does not contradict any definition found in or ascertained by a reading of the patent documents."). A court may, however,

limit the ordinary meaning of a claim term when: (1) the patentee acted as his own lexicographer and clearly set forth a definition of the disputed claim term in either the specification or prosecution history, see e.g., Johnson Worldwide, 175 F.3d at 990; (2) the intrinsic evidence shows that the patentee distinguished the claim term from prior art on the basis of a particular embodiment, expressly disclaimed subject matter, or described a particular embodiment as important to the invention, see e.g., Spectrum Intern., Inc. v. Sterilite Corp., 164 F.3d 1372, 1378 (Fed. Cir. 1998)(narrowing a claim term's ordinary meaning based on statements in intrinsic evidence that distinguished claimed invention from prior art); SciMed Life Sys., Inc. v. Adv. Cardiovascular Sys., Inc., 242 F.3d 1337, 1343-44 (Fed. Cir. 2001)(limiting claim term based in part on statements in the specification indicating that "all embodiments" of the claimed invention used a particular structure); (3) the term chosen by the patentee so deprives the claim of clarity as to require resort to the other intrinsic evidence for a definite meaning. see e.g., Johnson Worldwide, 175 F.3d at 990; or (4) the patentee phrased the claim in step- or means-plus- function format. 35 U.S.C. § 112 ¶ 6; Watts v. XL Sys., Inc., 232 F.3d 877, 880-81 (Fed. Cir.2000) (construing § 112 ¶ 6).

In this case, upon analyzing the ordinary meaning of the term "dipping" to the '154 patent, this court finds that the term "dipping" must be limited from its ordinary meaning because: (1) the ordinary meaning of the non-technical term "dipping" is sufficiently broad and amorphous such that the scope of the term "dipping" can only be construed with recourse to the written description; and (2) the patentee distinguished the term "dipping" from prior art during the prosecution of the '154 patent.

In looking at the specification of the '154 patent, the first suggestion as to the appropriate scope of the term "dipping" can be found within the summary of the '154 patent which teaches:

"After drying, the gloves are turned inside out and dipped into a prepared Aloe Vera solution to saturate the outer surface." ('154 patent, Shen Wei's In Camera Response In Opposition to Kimberly-Clark's Motion For Summary Judgment of Non-Infringement, attached Exhibit D, KC 001984: Col. 2, 30-33). From this statement, notwithstanding the ordinary meaning of the term "dipping," the invention claimed by the '154 patent includes a process by which the gloves must be "dipped" until saturated.

Next within one preferred embodiment of the '154 patent, the '154 patent teaches: "To associate Aloe Vera with the surface of the glove [turned inside out], Aloe Vera solution can be sprayed onto the surface of the glove. Alternatively, the glove can be immersed into the Aloe Vera solution." (Id. at KC 001985: Col. 3, 57-60). From this statement, this court is left to infer that "dipping" as claimed in the '154 patent is either association by spraying until saturated or association by immersion until saturated. The '154 patent also states: "The latter method [association by immersion] is preferred because it creates a complete and even distribution of the Aloe Vera solution," (Id. at KC 001985: Col. 3, 60-62), and continues: "In one preferred embodiment, the dipping process is accomplished by grouping a number of gloves in a batch. . . The gloves are immersed in the solution [of Aloe Vera] for at least 10 minutes to allow adequate absorbency." (Id. at KC 001985: Col. 3, 63-67). As such, since association by immersion will create a complete and even distribution of the Aloe Vera solution, which is specifically claimed by the '154 patent, see (id. at KC 001985: Claim 5, Col. 4, 48-49), the only logical conclusion is that the term "dipping" is equivalent to association by immersion until saturated.[2]

---

[2]Based on the language of the '154 patent, the court must also infer that the term "saturated" must mean "adequate absorbency."

In looking at the prosecution history of the '154 patent, in a December 6, 2000, Patent Office action, the Patent Examiner rejected the '154 patent in part based on prior art stating: "Buchanan reads on a disposable medical glove comprising rubber latex and a moisturizing composition containing aloe vera (via powder or <u>spray coating</u>) to the interior of the glove." (Shen Wei's In Camera Response In Opposition to Kimberly-Clark's Motion For Summary Judgment of Non-Infringement, attached Exhibit D, Prosecution History at KC 002048)(emphasis added). In order to avoid prior art, the Examiner stated: "Claim 1 [of the '154 patent] would be allowable if the following limitations were added to the claim to clearly recite how the aloe vera is applied to the glove: "wherein the aloe vera is attached to the flexible material by dipping the glove into a solution of comprising aloe vera. . ." (<u>Id</u>. at KC 002049-KC002050). Based on upon this limitation added to Claim 1 by the patentee, it is clear that the term "dipping" is not equivalent to association by spraying until saturated, leaving association by immersion as the only alternative.

Accordingly, upon review of the intrinsic evidence of the '154 patent, the patentee has defined the term "dipping" by implication through his consistent use of the term "dipping" throughout the '154 patent. <u>See</u> e.g., <u>Bell Atlantic Network Services, Inc. v. Covad Communications Group, Inc.</u>, 262 F.3d 1258, 1273 (Fed. Cir. 2001)("the patentees defined the term "mode" by implication, through the term's consistent use throughout the '786 patent specification)(citing <u>Vitronics</u>, 90 F.3d at 1582). As such, this court construes the claim term "dipping," as used in the '154 patent, to mean association by immersion until saturated. This court also finds that the term "saturated" is defined within the '154 patent, also by implication, to mean adequately absorbed, and that the term "immersion," as used within the '154 patent, carries its ordinary meaning: " to cover completely in a liquid; submerge". <u>See</u> American Heritage Dictionary, at 643 (2nd Coll. ed. 1982).

Shen Wei's proffered definition of the term "dipping" cannot be correct because Shen Wei's construction of the term "dipping" would include association by spraying.[3] As discussed previously within this section, the term "dipping" cannot include association by spraying because: (1) the Patent Office specifically rejected the patentability of the '154 patent claiming association by spraying causing the patentee to surrender association by spraying during the prosecution of the '154 patent, (Prosecution History at KC 002048-KC002050); and (2) the '154 patent specifically distinguishes the term "dipping" from association by spraying and equates "dipping" to association by immersion. ('154 Patent, KC 001985: Col. 3, 57-67).

Moreover, Shen Wei's proffered construction of the term "dipping" reads out express limitations as to the scope of the term "dipping" found in the prosecution history of the '154 patent, and therefore must be rejected. See, e.g., Texas Instruments Inc. v. U.S. Intern. Trade Com'n, 988 F.2d 1165, 1171 (Fed. Cir. 1993)("Relying on the claim language, the specification, prosecution history, and the testimony of the inventors and experts all support the conclusion that the fluid insulating material is injected through a gate on the other, or opposite side, of the electrical conductors. Indeed, to construe the claims in the manner suggested by TI [Texas Instruments Inc.] would read an express limitation out of the claims."). Where Shen Wei's current methodology is a process that immerses a glove into a solution comprising aloe vera until the aloe vera is adequately absorbed onto the surface of the glove and is evenly distributed onto the insides of the glove to a thickness of about 0.01 mm. See ('154 Patent, KC 001985: Claims 4-6, Col. 4, 45-53), Shen Wei's

---

[3] Shen Wei explains that spraying is typically done in an on-line process where gloves pass through multiple spray nozzles that project aloe vera onto the surfaces of the gloves. Based on this explanation, it is clear that a typical spraying operation would cause the gloves to be plunged briefly into a liquid in order to wet, coat, or saturate their inner surfaces with aloe vera.

proffered construction of the term "dipping" is so broad, the proffered construction disregards whether the aloe vera is evenly distributed throughout the interior of the glove and also disregards whether the aloe vera is at a thickness of 0.01 mm.

In summary, while the ordinary meaning of the term "dipping" supports a broader meaning than the construction articulated today by this court, Shen Wei proffered construction of the term "dipping" would alleviate the need to include the term "dipping" within the '154 patent and therefore is incorrect.

II.     Comparison of Construed Claims with the Accused Process

Whether an accused process infringes a claim, literally or under the doctrine of equivalents, is a question of fact. See Insituform Technologies, Inc. v. Cat Contracting, Inc., 161 F.3d 688, 692 (Fed. Cir. 1998). Thus, on a motion for summary judgment for noninfringement, this court must evaluate based on the facts in the record, resolving all reasonable factual inferences in favor of Shen Wei, whether there are any genuine issues of material fact such that a reasonable finder of fact could find that K-C's processes infringed Claims 1 or 8 of the '154 patent. See Voice Technologies Group, Inc. v. VMC Sys., Inc., 164 F.3d 605, 612 (Fed. Cir.1999).

a.

"To prove literal infringement, the patentee must show that the accused device contains every limitation in the asserted claims. If even one limitation is missing or not met as claimed, there is no literal infringement." Mas Hamilton Group v. LaGard, Inc., 156 F.3d 1206, 1211 (Fed. Cir.1998)(citations omitted). Focusing on the alleged infringement of the term "dipping."[4] Shen

---

[4] The court has considered K-C's motion for summary judgment as to the term "removing," and finds that there is sufficient evidence in the record to create a genuine issue of material fact such that a reasonable finder of fact could find that K-C's accused process does

Wei bases its arguments, of literal infringement and infringement under the doctrine of equivalents, on the observations of its retained expert, Richard L. Cox. As to literal infringement, Mr. Cox provides:

> It was my observation [of K-C's emollient process in Thailand] that the quantity of gloves in the air and at the bottom of the tumbler varied considerably during the process. I would estimate that at any one time 10% - 60% (roughly 800-4800 gloves, calculated and based on each glove weighing 6 grams and KC processing 48 kilograms of gloves in each tumbler load) of the gloves are at the bottom of the tumbler and include substantial amounts of emollient solution on the outer surface (which are ultimately the inner surface of the glove when they are inverted). Thus, at the bottom of the tumbler gloves come in contact with each other and aloe vera is transferred. [citation omitted]. After the transfer of aloe vera, the gloves proceed through the tumbling cycle. . .
>
> My conclusion is that Kimberly-Clark's application process applies the aloe vera solution by more than just spraying. Spraying is not the singular mechanism for coating the gloves with aloe vera. [citation omitted]. At least some of the gloves have aloe vera applied by means of dipping, some by the sloshing of the washer-dryer/tumbler, and most gloves probably see all three types of application.

see (Resp. in Opposition to Motion, Cox Decl. at 6-7, attached Tab A).

Based on the observation that at any one point in time during K-C's process within the commercial dryer some number of gloves are in the air while the rest of the gloves are at the bottom of the rotating drum, Shen Wei analogizes that the gloves at the bottom of the drum which contain emollient solution on their surfaces in combination with the emollient solution falling from the spray above create a "soup" of gloves and excess emollient solution. Shen Wei concludes that dipping occurs when the gloves in the air fall and land in what Shen Wei characterizes as "soup" at the bottom of the rotating drum.

Taking Mr. Cox's observations as true, Shen Wei's soup analogy fails to create an issue of

---

cause its gloves to be "moved from a previous position held" within a solution of aloe vera, either literally or equivalently. As such, K-C's motion for summary judgment on the issue of infringing the term "removing" must be denied.

material fact that K-C's process literally infringes the '154 patent. There is absolutely no evidence in the record to create a genuine issue of fact that there is any "soup" or "broth," of excess emollient solution at the bottom of the rotating drum thus causing gloves falling from within the tumbler to be dipped into freestanding emollient solution. Nowhere in Mr. Cox's declaration, does Mr. Cox observe that emollient solution accumulates at the bottom of the rotating drum during K-C's process such that gloves at the bottom of the drum are floating in emollient solution and such that gloves falling from the top of the drum are immersed into a mixture of gloves and emollient. Moreover, K-C has produced competent evidence in support of its motion that during the emollient application process no emollient solution accumulates at the bottom of the commercial dryer.

Shen Wei also argues that dipping occurs during K-C's process where aloe vera is transferred from one glove to another glove either in mid-air or at the bottom of the dryer. Mr. Cox observed that there existed roughly 800-4800 gloves at the bottom of the rotating drum at any one point in time and that those gloves had substantial amounts of emollient solution on their outer surfaces. Mr. Cox also observed that, simultaneously with the gloves at the bottom of the rotating drum, there were a number of gloves in mid-air being sprayed by the single nozzle at the top of the dryer. Mr. Cox opines that as the gloves at the bottom of the tumbler come in contact with each other aloe vera is transferred, and also opines that as the gloves from the bottom of the rotating drum are tossed into the air and come in contact with other the gloves which are falling to the bottom aloe vera is transferred.

This court finds there is insufficient evidence to create an issue of material fact that the transfer of aloe vera from one glove touching another literally infringes the '154 patent. The '154 patent does not claim an invention where aloe vera is associated to the inside of a disposable

13

examination glove by its touching other gloves containing an amount of emollient solution. Instead the '154 patent claims an invention where aloe vera is associated to the inside of a disposable examination glove by dipping the glove into a solution, which has been pre-treated and free from all contaminates. Accepting the observations of the plaintiff's expert witness as true, Mr. Cox merely opines that during K-C's process, some gloves containing a substantial amount of aloe vera come into contact with other gloves containing aloe vera. Mr. Cox opines that this contact of gloves transfers aloe vera. This transfer of aloe vera from one glove to another about which Mr. Cox opines, however, is not literally the same as "dipping" a clean glove into a solution of aloe vera such that aloe vera is evenly distributed throughout the inside of the glove to a thickness of 0.01 mm.[5] Accordingly, upon review of the '154 patent and the accused process, there is insufficient evidence in the record to create an issue of material fact that would allow a reasonable finder of fact to find that the K-C's process uses "dipping" in a manner that literally infringes Claim 1 or 8 of the '154 patent.

b.

Under the doctrine of equivalents, a process that does not literally infringe the express terms of a patent claim may nonetheless be found to infringe if there is equivalence between the elements of the accused process and the claimed elements of the patented invention. Warner-Jenkinson Co., Inc. v. Hilton Davis Chemical Co., 520 U.S. 17, 21, 117 S.Ct. 1040, 1045 (1997)(citations omitted). Often language within patent claims does not capture every nuance of an invention nor describe with complete precision the range of its novelty. Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.,

---

[5]Additionally, the transfer of aloe vera from one glove to another is not literally the same as "dipping" because the transfer of aloe vera from glove to glove does not require either glove to be immersed into a liquid until saturated.

Ltd., --- U.S. ---, 122 S.Ct. 1831, 1837 (2002). If patents were always interpreted by their literal terms, their value would be greatly diminished. Id. As such, the doctrine of equivalents allows the patentee to claim insubstantial alterations in the patented process that were not captured in drafting the original patent claim but which could be created through trivial changes. Festo, 122 S.Ct. at 1838.

In its motion for summary judgment, K-C argues that prosecution history of the '154 patent prevents Shen Wei from claiming that K-C's spraying process is equivalent to Shen Wei's dipping process. In general, infringement under the doctrine of equivalents is limited by prosecution history estoppel. Cooper Cameron Corp. v. Kvaerner Oilfield Products, Inc., 291 F.3d 1317, 1320 -1321 (Fed Cir. 2002)(citations omitted). Prosecution history estoppel ensures that the doctrine of equivalents remains tied to its underlying purpose. Festo, 122 S.Ct. at 1839. Where the original application once embraced a purported equivalent, but the patentee narrowed the claims to obtain the patent or to protect its validity, the patentee cannot assert those surrendered equivalents or claims within an infringement suit. Id.

As discussed earlier in this opinion, in the December 6th Patent Office action, the examiner rejected the '154 under 35 U.S.C. § 102(b) as being anticipated by Buchanan, international patent WO 94/12115. (Shen Wei's In Camera Response In Opposition to Kimberly-Clark's Motion For Summary Judgment of Non-Infringement, attached Exhibit D, Prosecution History at KC 002048). The examiner suggested that the '154 patent would be allowed if limitations were added to Claim 1 in order to clearly recite how the aloe vera was to be applied to the glove. (Id. at KC 002049-KC 002050). The examination suggested that the term "dipping" be used specifically so that "dipping" would be distinguished from spraying or powder. Id. In the final amendments to the '154 patent,

the patentee accepted the examiner's suggestions, see ('154 Patent, Claim 1 at KC 001985), surrendered association by "powder or spray coating" as patentable, and thereby obtained the '154 patent. Accordingly, Shen Wei is estopped from claiming a method of applying aloe vera via spraying is equivalent to dipping.

This court's analysis under the doctrine of equivalents does not end here, however, this court still must determine whether there exists a genuine issue of material fact that K-C's process is truly spraying or involves another method of association of aloe vera to the interior of gloves which a reasonable finder of fact could find is equivalent to "dipping." as used in the '154 patent. In applying the doctrine of equivalents, the essential inquiry is whether the accused process contains elements identical or equivalent to each claimed element of the patented invention. Warner-Jenkinson Co., Inc., 520 U.S. at 40, 117 S.Ct. 1040. An analysis of the role played by each element of the accused process in the context of each aspect of the claimed invention will inform as to whether a specific element of an accused process matches the function, way, and result of the claimed element, or whether the substitute element plays a role substantially different from the claimed element. Id. Shen Wei's expert provides:

> The KC process of applying aloe vera is equivalent to dipping because it enjoys the same purpose as in the Shen Wei patent of applying aloe vera to the inner surface of the glove; the means is via applying an aqueous solution followed by dehydration; and the end result is a glove with a coating of aloe vera. KC's method produces aloe vera coated gloves that are extremely similar to those produced by more traditional dipping methods.

see (Resp. in Opposition to Motion, Cox Decl. at 8, attached Tab A).

Mr. Cox's errs in comparing the entire process claimed by the '154 patent to K-C's process as a whole. Each element contained in a claim is deemed material to defining the scope of the patented invention, and thus the doctrine of equivalents must be applied to individual elements of

16

the claim, not to the invention as a whole. Warner-Jenkinson, 520 U.S. at 29, 117 S.Ct. 1040. Mr. Cox also errs in his conclusion that K-C's process of applying aloe vera is equivalent to the '154 patent merely because K-C's process enjoys the same purpose as the '154 patent: applying aloe vera to the inner surface of the glove. Purposes, methods of doing business, purely mental steps, naturally occurring phenomena or laws of nature, however meritorious, do not constitute patentable subject matter. Application of Chatfield, 545 F.2d 152, 157 (Cust. & Pat. App. 1976). In light of these errors, Mr. Cox's observations and conclusions are insufficient to create an issue of material fact that K-C's processes is equivalent to the '154 patent.

In comparing each element of the accused product to the specific claims of the patent, both processes associate aloe vera to the inner surface of a glove by means of applying an aqueous solution followed by dehydration; the end result being a glove with a coating of aloe vera. The '154 patent claims a process where gloves are immersed into a solution of aloe vera resulting in a coating of aloe vera evenly distribution onto the surface of the glove at a thickness of about 0.01 mm. K-C's process does not immerse gloves into a solution of aloe vera, but instead sprays a solution of aloe vera onto gloves, which does not result in an even distribution of aloe vera.

Shen Wei argues, however, that K-C's process is not merely association by spraying. Shen Wei explains that in the latex glove industry, spraying is typically done in an on-line process where gloves pass multiple spray nozzles to ensure even distribution. Since K-C's process is not a typical spraying process because K-C uses only one spray nozzle positioned on the inside door of a commercial dryer, Shen Wei concludes that K-C's process of applying aloe vera includes both spraying and "sloshing," which is equivalent to the '154 patent.

Shen Wei's defines "sloshing" as the part of K-C's process during which the gloves at the

17

bottom of the dryer containing emollient solution come into contact with other gloves. Assuming "sloshing" does occur during K-C's process, sloshing is not functionally equivalent to "dipping" because in order to "slosh" one glove must already have emollient solution associated to its outside surface and neither glove is immersed into aloe vera, whereas dipping is a process by which only clean gloves, free from any contaminates, are associated with aloe vera. The evidence in this case demonstrates that, at best, "sloshing," as described by Shen Wei is a method to ensure even distribution of aloe vera already applied to the outside surfaces of disposable gloves but not a method of applying aloe vera.

Based on the evidence in the record, this court finds that K-C's process of association, while not dipping, is not solely spraying, but instead a combination of spraying and transferring aloe vera. Despite this modified spraying technique, employed by K-C, this court nonetheless finds insufficient evidence to create an issue of material fact that the K-C's process is an equivalent of the '154 patent. The prior art and the prosecution history of the patent '154 patent teaches that the spraying part of K-C's process is not equivalent to dipping, and the undisputed evidence on the record teaches that the "sloshing" part of K-C's process is a method of distributing aloe vera already associated to gloves as opposed to a method of initially applying aloe vera. Upon review of the record in this case, viewing all the evidence a light most favorable to Shen Wei, the evidence in the record demonstrates that no reasonable jury could determine K-C's process equivalent to the '154 patent.

## CONCLUSION

For all the above stated reasons, the K-C's motion for summary judgment is granted in part and denied in part. K-C motion for reassignment of Case No. 02 C 5196 pursuant to Local Rule 40.4 is denied. This case is dismissed with prejudice in its entirety. All other pending motions are moot.

ENTER:


JAMES F. HOLDERMAN
United States District Judge

DATE: August 27, 2002







# United States District Court
## Northern District of Illinois
### Eastern Division

**DOCKETED**

AUG 2 8 2002

SHEN WEI INC

v.

KIMBERLY-CLARK CORP

**JUDGMENT IN A CIVIL CASE**

Case Number: 02 C 450

☐ Jury Verdict. This action came before the Court for a trial by jury. The issues have been tried and the jury rendered its verdict.

■ Decision by Court. This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED that summary judgment is entered in favor of defendant Kimberly-Clark Corporation and against plaintiff Shen Wei Inc. This action is dismissed with prejudice in its entirety.

Michael W. Dobbins, Clerk of Court

Date: 8/27/2002

J. Smith, Deputy Clerk

